CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
March 20, 2026
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| Stephanie Boudreaux, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:25-cv-00051 |
| | ) | |
| Booz Allen Hamilton, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This matter is before the court on Defendant Booz Allen Hamilton's motion to dismiss

Plaintiff Stephanie Boudreaux's amended complaint under Federal Rule of Civil Procedure

12(b)(6). (Dkt. 16.) For the reasons that follow, the court will grant the motion.

### I. Background

#### A. Factual History

Stephanie Boudreaux is a female resident of Colorado. (Am. Compl. ¶ 3 (Dkt. 14).)

She suffers from multiple disabilities, including severe anxiety, panic attacks, and severe

internal anal fissures, which impede everyday activities like standing and sitting. (*Id.*)

In early 2020, Boudreaux began working as an Intelligence Analyst for Booz Allen

Hamilton ("BAH"), based out of Charlottesville, Virginia. (*Id.* ¶ 5.) Her work centered on

BAH's Defense Intelligence Agency Technical Collection Targeting Support ("TCTS")

contract. (*Id.*)

While on assignment in England for BAH, Boudreaux observed a male coworker, Michael Schindler, engage in alleged timecard fraud by billing the company during personal travel. (*Id.* ¶ 6.) Boudreaux reported this observation to her superiors, Jeff Graham and Tucker Moore, upon her return in November 2021. (*Id.* ¶ 7.) Booz Allen Hamilton "responded by placing [Boudreaux] on Mr. Schindler's team." (*Id.* ¶ 8.)

Boudreaux's time on Schindler's team did not go well. During a team meeting, Schindler "yelled at" Boudreaux and "accused her of trying to 'get [him] fired'" in front of colleagues and clients. (*Id.*) While Boudreaux reported Schindler's behavior to Graham, the latter did nothing to address it. (*Id.* ¶ 9.) And when Boudreaux reported Schindler to human resources, Graham "sought to punish her" by moving her—and not Schindler—to a different team. (*Id.* ¶ 10.)

Soon after that, Graham departed on military leave. (*Id.* ¶ 11.) BAH promoted Boudreaux "based on her superior job performance" and transferred Schindler to another project. (*Id.*) But when Graham returned from leave, he called a meeting for all team members. (*Id.* ¶ 12.) There, he "berated" Boudreaux and her team, telling them that the "'petty bullshit' needed to stop." (*Id.*) In front of everyone, Graham told Boudreaux that the project was a "failure" and that the government client was dissatisfied with her work. (*Id.* ¶ 13.) Graham "spoke to [Boudreaux] using a tenor and tone that he did not use with [Boudreaux's] male colleagues." (*Id.*)

According to Boudreaux, Graham's statements were false. (*Id.* ¶ 15.) To the contrary, the government customer had been thrilled with Boudreaux's results. (*Id.*) Still, Graham did not praise Boudreaux's accomplishments as he did for Boudreaux's male counterparts. (*Id.*)

The next day, Graham accused Boudreaux of "running her mouth" to coworkers about the meeting. (*Id.* ¶ 14.) "In a raised voice," Graham told Boudreaux that "he did not 'care about her feelings.'" (*Id.*) Graham "verbally berat[ed]" Boudreaux and "question[ed] her performance" for months thereafter. (*Id.* ¶ 16.)

In August 2022, Boudreaux took time off work due to illness. (*Id.* ¶ 17.) When Graham learned of Boudreaux's illness, he told her she would be removed from a scheduled work conference "due to [her] medical issues." (*Id.*) Boudreaux was able to attend only after she reported Graham's statement to human resources. (*Id.*)

During August and September 2022, Boudreaux worked with BAH staff to obtain reasonable accommodations for her disabilities. (*Id.* ¶ 19.) But BAH told Boudreaux that the proposed accommodations required Graham's approval. (*Id.* ¶ 20.) Boudreaux told BAH that she "feel[s] like [she is] being pushed out and [is] exhausted from this continuous problem," and expressed displeasure with how Graham wielded her disability to "create a narrative" that she was performing poorly. (*Id.* ¶ 21.)

On January 13, 2023, Graham spoke to Boudreaux at a BAH holiday party. (*Id.* ¶ 22.) He wanted to discuss Boudreaux's requested accommodations and wished to "clear the air" between them. (*Id.*) Boudreaux responded that the BAH holiday party was not an appropriate setting for such a conversation and declined to speak with him. (*Id.*) Graham persisted and "became visibly frustrated when she refused." (*Id.* ¶ 23.)

Two weeks later, on January 27, 2023, Graham approached Boudreaux to discuss alleged performance issues. (*Id.* ¶ 24.) When they met, he "spoke over her," prevented her from responding, and "expressed anger towards her." (*Id.*)

On February 1, 2023, Boudreaux requested a new manager to replace Graham. (*Id.*) Five days later, Boudreaux reported her January 13 and January 27 exchanges with Graham to BAH. (*Id.* ¶ 26.) BAH did not immediately investigate these complaints and instead "allowed . . . Graham to continue to treat [Boudreaux] disparately and retaliate against her." (*Id.*) That same day, Boudreaux took time off of work for health reasons. (*Id.* ¶ 27.) Soon after, Graham sent Boudreaux an email asking for the estimated hours she planned to work on the TCTS contract. (*Id.*)

On February 27, 2023, Graham informed Boudreaux that her hours on the TCTS would be reduced by half in March, and her hours in April would be cut completely. (*Id.* ¶ 28.) "Upon information and belief," Boudreaux alleges that BAH did not cut other employees' hours more than hers. (*Id.*) Boudreaux alleges that Defendant "constructively discharged" her on March 24, 2023, due to BAH's "refusal to protect [Boudreaux] from Mr. Graham's retaliation and disparate treatment on the basis of [Boudreaux's] gender and disability, and [BAH's] decision to drastically cut Plaintiff's working hours." (*Id.* ¶ 29.)

Boudreaux filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on September 13, 2023. (*Id.* ¶ 31; *see also* Dkt. 17-1.) BAH filed a Position Statement in response to the Charge on November 3, 2023. (Am. Compl. ¶ 32; *see also* Dkt. 18-1.) EEOC issued its Notice of Right to Sue on February 26, 2025. (Am. Compl. ¶ 33.)

## B. Procedural History

Boudreaux originally filed suit in Charlottesville Circuit Court. (Dkt. 1-1 at 11.) BAH removed this case to this court on June 24, 2025, (Dkt. 1), and moved to dismiss Boudreaux's

complaint on July 1, 2025, (Dkt. 7).  Soon after, Boudreaux filed an amended complaint on August 4, 2025 with BAH's consent.  (Am. Compl. (Dkt. 14).)  In it, Boudreaux alleges four claims: gender discrimination under Title VII (Count I), retaliation under the Americans with Disabilities Act ("ADA") (Count II), Title VII retaliation (Count III), and retaliation under the Virginia Human Rights Act ("VHRA") (Count IV).  (*Id.* ¶¶ 34–56.)  Boudreaux seeks a cumulative $3,000,000 in past and future lost wages, $1,400,000 in punitive damages, $1,400,000 in compensatory damages, attorneys' fees and costs, and pre-judgment and post-judgment interest.  (*Id.* at 9–10.)

BAH filed its motion to dismiss Boudreaux's amended complaint on August 28, 2025. (Dkt. 16.)  Boudreaux responded on September 11, 2025.  (Pl.'s Resp. (Dkt. 18).)  Defendant replied one week later.  (Def.'s Reply (Dkt. 19).)

## II.    Standard of Review

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  They do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016)).  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In reviewing a motion to dismiss for failure to state a claim, "a court must consider the factual

- 5 -

allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff."

*Bing*, 959 F.3d at 616.

In ruling on a motion to dismiss, courts are generally limited to allegations contained in the complaint. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166-67 (4th Cir. 2016). However, courts may consider documents explicitly incorporated into the complaint by reference. *Id.* at 166 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). In addition, a court may "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* (citing *Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). Considering such documents does not convert a motion to dismiss to one for summary judgment. *See Goldfarb v. Mayor of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015).

Accordingly, in ruling on the motion to dismiss, the court will consider Boudreaux's EEOC Charge. *See Bowie v. Univ. of Md. Med. Sys.*, No. ELH-14-03216, 2015 WL 1499465, at *3 n.4 (D. Md. Mar. 31, 2015) ("Courts commonly consider EEOC charges as integral to a plaintiff's Complaint, *i.e.*, effectively a part of the pleading, even if the EEOC charge is not filed with the Complaint.").

### III.   Analysis

In its motion to dismiss, BAH raises two main categories of arguments. First, BAH argues that several of Boudreaux's claims and allegations are procedurally barred—either as untimely or unexhausted. (Def.'s Mem. in Supp. at 7–11.) Second, BAH argues that

Boudreaux fails to state a claim on the surviving claims.  (*Id.* at 11–26.)  The court addresses each in turn.

**A. Boudreaux's allegations before November 17, 2022 are untimely, while her Title VII retaliation claim and post-January 2023 allegations have been exhausted.**

   1.  <u>Boudreaux's allegations before November 17, 2022 are time barred for purposes of her federal claims.</u>

BAH argues that any allegation in Boudreaux's amended complaint that occurred prior to November 2022 is time barred.  (Def.'s Mem. in Supp. at 7-8.)

Title VII and the ADA require plaintiffs in Virginia to file an EEOC charge within 300 days of an alleged unlawful employment action.  *Broome v. Iron Tiger Logistics*, No. 7:17-cv-444, 2019 WL 6719495, at *8 (W.D. Va. Dec. 10, 2019).  Title VII "precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002).

Boudreaux filed her EEOC charge on or about September 13, 2023. (Am. Compl. ¶ 31.)  Thus, BAH asserts that Boudreaux's allegations preceding November 17, 2022 are time barred.[1]  (Def.'s Mem. in Supp. at 7-8.)  Boudreaux's sole rebuttal is that the "continuing violation" theory saves pre-November 17, 2022 allegations.  (Pl.'s Resp. at 7–9.)  Under this exception, allegations falling outside of the EEOC's 300-day window may be considered if "the pre- and post-limitation events are part of a single course of conduct evidencing a discriminatory policy" when "at least one act occurs during the relevant window."  *Bell v. Univ.*

---

[1] Defendant argues that "all allegations prior to November 23, 2022 . . . are untimely." (Def.'s Mem. in Supp. at 7.)  But Boudreaux alleges that she filed her charge of discrimination on September 13, 2023. (Am. Compl. ¶ 31.)  Because 300 days before September 13, 2023 is November 17, 2022, not November 23, 2022, the court considers the former to be the operative cutoff date for purposes of resolving the instant motion to dismiss.

*of Md. Coll. Park Campus Facilities Mgmt.*, No. PX-17-1655, 2018 WL 3008325, at *6 (D. Md. June 14, 2018).

But the continuing violation theory does not—and cannot—apply here. "[I]t is well-settled that the continuing violation theory only applies to hostile work environment claims." *Tang v. Becerra*, No. SAG-21-2739, 2022 WL 4465899, at *5 (D. Md. Sept. 26, 2022) (citing *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007)); *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 221 n.5 (4th Cir. 2016). That's because hostile environment claims by "[t]heir very nature involves repeated conduct" such that the "'unlawful employment practice' . . . cannot be said to occur on any particular day." *Nat'l R.R. Passenger Corp.*, 536 U.S. at 115.

Boudreaux explicitly denies that she is asserting a hostile workplace claim. (Pl.'s Resp. at 8). Instead, her amended complaint alleges discrete acts of discrimination, not a continuing violation. Thus, Boudreaux's allegations relating to events occurring before November 17, 2022, are time-barred for purposes of Boudreaux's federal claims.[2]

The alleged protected activity that forms the basis of Boudreaux's ADA retaliation claim occurs before November 17, 2022. (Am. Compl. ¶¶ 19, 42–44.) For this reason, Count II will be dismissed. *Cf.* Allen v. TV One, LLC, No. DKC 15-1960, 2016 WL 337533, at *10 n.4 (D. Md. Jan. 28, 2016) (citing *Hylind v. Xerox Corp.*, 380 F.Supp.2d 705, 709-10 (D. Md. 2005)), *aff'd*, 481 F. App'x 819 (4th Cir. 2012) ("Purported protected activity and adverse

---

[2] The parties contest whether the EEOC's 300-day requirement applies to Boudreaux's state-law VHRA claim. (Pl.'s Resp. at 9–10; Def.'s Reply at 5–6.) The court discusses this argument in more detail below.

employment action falling outside Title VII's statutory window . . . do not allow Plaintiff to state a claim.").

    2.  <u>Boudreaux exhausted her administrative remedies for her Title VII retaliation claim.</u>

BAH argues that Boudreaux's Title VII retaliation claim (Count III) has not been exhausted, as her EEOC charge did not list such a claim.  (Def.'s Mem. in Supp. at 9; EEOC Charge ¶ 16 (describing her retaliation complaint only as "retaliation . . . for seeking disability accommodations").)  Boudreaux responds that her Title VII retaliation claim is "like or reasonably related to" her charge.  (Pl.'s Resp. at 6–7.)

A plaintiff must generally raise claims in their EEOC charge before they can pursue them in federal court.  Claims that "exceed the scope of the EEOC charge . . . are procedurally barred" from proceeding in future litigation.  *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005).  Thus, a "plaintiff's claim generally will be barred if his charge alleges discrimination on one basis—such as race—and he introduces another basis in formal litigation—such as sex."  *Id.*

But the Fourth Circuit also instructs that "EEOC charges must be construed with utmost liberality since they are made by those unschooled in the technicalities of formal pleading."  *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988).  Exhaustion should not become a "tripwire for hapless plaintiffs" or erect "insurmountable barriers to litigation out of overly technical concerns."  *Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 594 (4th Cir. 2012).  Thus, if federal claims (1) are "reasonably related to her EEOC charge," *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000), or (2) "would naturally have

arisen from an investigation" of the claims that *were* included in an EEOC charge, *Chacko*, 429 F.3d at 509, these new claims can be introduced for the first time in federal court.

Boudreaux has exhausted her Title VII retaliation claim because she meets both of these criteria. Her charge recounts Graham's allegedly discriminatory conduct, notes that Boudreaux reported it to human resources, and alleges some adverse action followed. (EEOC Charge ¶¶ 15–16.) Moreover, BAH's own position statement to the EEOC describes conduct Boudreaux self-reported as "retaliatory and discriminatory based on sex" to the employee relations team.[3] (Dkt. 18-1 at 8–9); *see Lavigne v. Cajun Deep Founds., LLC*, 32 F. Supp. 3d 718, 730 (M.D. La. 2014), *aff'd*, 654 F. App'x 640 (5th Cir. 2016) (noting that an employer's EEOC position statement is relevant to determining whether charges could naturally arise from an investigation).

Considering Boudreaux's EEOC with "utmost liberality," as the court must, the court finds that Boudreaux has exhausted her Title VII retaliation claim. *Alvarado*, 848 F.2d at 460.

3. <u>Boudreaux exhausted her administrative remedies for allegations occurring between January and March 2023.</u>

BAH argues that any allegations from January to March 2023 in Boudreaux's amended complaint are procedurally barred, as Boudreaux omitted those events from her EEOC charge.[4] (Def.'s Mem. in Supp. at 10–11.) Boudreaux responds that these allegations are not

---

[3] BAH's position statement will be considered only for the limited purpose of establishing Boudreaux's exhaustion of her Title VII claims. *See Okusami v. Md. Dep't of Health & Mental Hygiene*, No. ELH-18-1701, 2019 WL 1003607, at *10 (D. Md. Feb. 28, 2019) (considering defendant's position statement because it "give[s] rise to a plaintiff's legal right to file a civil suit for employment discrimination and [is] necessarily relied on to satisfy statutory requirements"). The court will not consider BAH's "EEOC position statement for any purpose beyond establishing the exhaustion of" Boudreaux's Title VII claims. *West v. City of Charlottesville*, No. 3:24-cv-00027, 2025 WL 256998, at *8 (W.D. Va. Jan. 21, 2025).

[4] These post-January 2023 allegations are: that Graham approached Boudreaux at the January 13, 2023 work party, (Am. Compl. ¶¶ 22–23); that on January 27, 2023, Graham accosted her about performance issues, "spoke over her, did not allow her to respond, and expressed anger towards her" in a conversation, (*id.* ¶ 24); that BAH failed to investigate Boudreaux's February 6, 2023 complaint about the January 13 and January 27 incidents and allowed her to remain on the same team as Mr. Graham, (*id.* ¶ 26); that Graham "demand[ed]" to know the estimated number of hours that Boudreaux

procedurally barred, as they are "like or reasonably related to" the conduct that she *did* describe in her charge. (Pl.'s Resp. at 5.)

"[F]actual allegations made in formal litigation must correspond to those set forth in the administrative charge." *Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022) (quoting *Chacko*, 429 F.3d at 509). A plaintiff "fails to exhaust [her] administrative remedies where . . . [her] administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in [her] formal suit." *Chacko*, 429 F.3d at 506. However, if factual allegations in an administrative charge (1) "are reasonably related to the factual allegations in the formal litigation," *id.* at 509, or (2) would "naturally have arisen from an investigation," *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 306 (4th Cir. 2019), these allegations may be newly asserted in subsequent litigation.

Boudreaux's post-January 2023 factual allegations are "reasonably related" to those included in her EEOC charge, because they do not reference "different time frames, actors, and conduct" so as to "describe two different cases." *Chacko*, 429 F.3d at 511–12. Both sets of facts involve the same actor (Graham), the same employer (BAH), and the same course of conduct (alleged retaliation following Boudreaux's complaints). Boudreaux's EEOC Charge specifically mentions the interaction at the holiday party and her subsequent reporting of the event to human resources. (EEOC Charge ¶ 15.) Moreover, an administrative investigation could reasonably reveal the post-January 2023 allegations. Boudreaux's EEOC charge alleged that she was constructively discharged on March 24, 2023. (*Id.* ¶ 16.) An administrative

---

intended to perform work on the TCTS contract "by close of business," (*id.* ¶ 27); and that Graham notified Boudreaux that her hours on the TCTS contract would be cut, (*id.* ¶ 28).

investigation could have reasonably uncovered her post-January 2023 allegations, as they are the conditions that Boudreaux alleges constituted her constructive discharge. (Am. Compl. ¶ 29.)

For this reason, the court finds that Boudreaux's post-January 2023 allegations are not procedurally barred.

### B. Boudreaux Fails to State a Claim for Counts I, III, and IV.

1. <u>Boudreaux fails to state a Title VII discrimination claim.</u>

To state a claim for sex discrimination under Title VII, Boudreaux "must allege sufficient facts to make it plausible that (1) she suffered an adverse employment action, and (2) the action was because of her sex." *Franovich v. Hanson*, 687 F. Supp. 3d 670, 683 (D. Md. 2023) (citing *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 584–85 (4th Cir. 2015)).[5] "To allege that an employer acted because of [sex], there must be some connective thread between the alleged mistreatment and the protected status." *Kennedy v. NYX Ent., Inc.*, No. 8:25-cv-02035, 2025 WL 3017226, at *4 (D. Md. Oct. 28, 2025) (cleaned up).

"An adverse employment action is a discriminatory act which adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." *James v. Booz–Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (cleaned up). "The presence of an adverse employment action is 'an absolute precondition' to an employment discrimination suit." *Franovich*, 687 F. Supp. 3d at 683 (quoting *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985)).

---

[5] BAH assumes that Boudreaux must state a *prima facie* case of discrimination to survive a motion to dismiss. (Def.'s Mem. in Supp. 17–18.) But a plaintiff "need not plead facts sufficient to establish a prima facie case of [sex]-based discrimination to survive a motion to dismiss." *See Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017). Instead, Boudreaux must "allege facts to satisfy the elements of a cause of action created by that statute"—i.e. that BAH discriminated against her "*because of* [her] . . . sex." *McCleary-Evans,* 780 F.3d at 585 (citing 42 U.S.C. § 2000e–2(a)(1)).

Boudreaux alleges that BAH took three adverse actions because of her sex: that BAH cut her work hours, kept her on Mr. Graham's team, and constructively discharged her. (Am. Compl. ¶ 37.) The court examines each in turn.

> i. *Boudreaux's alleged constructive discharge does not constitute an adverse action.*

Constructive discharge can constitute an adverse action upon which a Title VII discrimination claim can be based. *McKinley v. Salvation Army*, 685 F. App'x 227, 228 (4th Cir. 2017). Constructive discharge occurs where circumstances make an employee's resignation "tantamount to an actual discharge." *Green v. Brennan*, 578 U.S. 547, 555 (2016). The claim has two elements. First, the plaintiff must show that "he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign." *Id.* This is an objective standard; it is not enough that "a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 212 (4th Cir. 2019) (citations omitted). Second, the plaintiff must show that she actually resigned in the face of those circumstances. *Green*, 578 U.S. at 555.

Boudreaux alleges that BAH constructively discharged her "as a result of Defendant's refusal to protect Plaintiff from Mr. Graham's retaliation and disparate treatment on the basis of Plaintiff's gender and disability and Defendant's decision to drastically cut Plaintiff's working hours." (Am. Compl. ¶ 29.) In response, BAH argues that the amended complaint fails to allege objectively intolerable working conditions. (Def.'s Mem. in Supp. at 11–17.)

As an initial matter, Boudreaux's response does not reply—at all—to BAH's extensive argument that Boudreaux's conditions weren't objectively intolerable as a matter of law. (*Id.*; *see generally* Pl.'s Resp.) In other words, Boudreaux effectively concedes this point. Moreover, the court agrees that these "difficult or unpleasant working conditions" described by Boudreaux[6], although unfortunate, would not "compel a reasonable person to resign." *Williams v. Giant Food Inc.*, 370 F.3d 423, 434 (4th Cir. 2004).

For this reason, the court finds that Boudreaux's alleged constructive discharge does not constitute an "adverse action" for the purposes of Boudreaux's Title VII claim.

> *ii.    Boudreaux's retention on Graham's team is not an adverse employment action.*

Boudreaux's second alleged adverse action—that BAH kept her on Graham's team rather than reassigning her because of her sex—fares no better. Courts have repeatedly held that "denial of a request to transfer to a new supervisor is not an adverse action." *Stewart v. Ross,* Nos. 1:18-cv-01369, 1:16-cv-00213, 2020 WL 1907471, at *16 (E.D. Va. Apr. 17, 2020), *aff'd*, 833 F. App'x 995 (4th Cir. 2021). This makes sense. After all, an adverse action must be an "injury respecting her employment terms or conditions" that leaves her "worse off," rather than leaving her in the same position. *Muldrow v. City of St. Louis*, 601 U.S. 346, 359 (2024).

For this reason, this allegation does not constitute an adverse action that supports a Title VII discrimination claim.

---

[6] The non-time barred allegations that might support Boudreaux's constructive discharge claim are: that Graham approached Boudreaux at the January 13, 2023 work party, (Am. Compl. ¶¶ 22–23); that Graham "spoke over her, did not allow her to respond, and expressed anger towards her" in a conversation, (*id.* ¶ 24); that BAH failed to investigate Boudreaux's February 6, 2023 complaint and allowed her to remain on the same team as Mr. Graham, (*id.* ¶ 26); that Graham "demand[ed]" to know the estimated number of hours that Boudreaux intended to perform work on the TCTS contract "by close of business," (*id.* ¶ 27); and that Graham notified Boudreaux that her hours on the TCTS contract would be cut, (*id.* ¶ 28).

   *iii. Boudreaux has not shown that BAH cut her hours because of her sex.*

  Finally, Boudreaux alleges an adverse action in the form of BAH cutting her work hours on the TCTS contract.

  Even if reduction of her work hours constituted an adverse employment action, Boudreaux has not plausibly alleged that this occurred "because of" her sex. Her one supporting allegation doesn't specify whether other women also had their hours cut. (Am. Compl. ¶ 28 ("Defendant did not cut any other *employee* on Mr. Graham's team's hours more than Plaintiff's, a disabled woman who engaged in protected activity.") (emphasis added).) Nor—fatally, and as Boudreaux concedes—does her amended complaint identify any similarly situated male counterparts who were treated differently. (Pl.'s Resp. at 15 (acknowledging "Plaintiff does not specifically identify an individual who was similarly situated").)[7]

  Additionally, Boudreaux did not point to any other statements that are "indicative of discriminatory animus." *Olarewaju v. Allied Universal*, No. DKC 21-3250, 2022 WL 3027991, at *4 (D. Md. Aug. 1, 2022). Of the non-time-barred allegations in the complaint, Boudreaux alleges that Graham "approached [her] at a work holiday party" and became "visibly frustrated when she refused" to engage with him, (Am. Compl. ¶¶ 22–23), and that Graham "continuously spoke over her, did not allow her to respond, and expressed anger towards her" in a meeting, (*id.* ¶ 24). But Boudreaux alleges nothing else to indicate that this wasn't "merely

---

[7] Boudreaux's response says that her reference to "male counterparts" in the amended complaint was intended to refer to the "similarly situated men on her team who held the same or similar job position and were supervised by Mr. Graham." (Pl.'s Resp. at 15 (citing Am. Compl. ¶¶ 13, 15–16, 24, 28, 38).) There are several problems with this argument. First, all of the allegations that actually mention "male counterparts" are time-barred, as these allegations occurred before November 2022. (*Id.* ¶¶ 13, 15). Second, none of these references to "male counterparts" in the complaint provided any facts describing who these male employees were, who supervised them, what positions they held, or how they were subjected to the same standards as Boudreaux. This is insufficient to allege a comparator in the Title VII context.

rude behavior" exercised by Graham towards men and women alike. *Nnadozie v. Manorcare Health Servs., LLC*, No. BPG-15-391, 2019 WL 1239874, at \*8 (D. Md. Mar. 15, 2019), *aff'd*, 792 F. App'x 260 (4th Cir. 2019).

Rather than drawing a reasonable inference, the court would have to "speculate" to "fill in the gaps" as to whether BAH's action occurred because of Boudreaux's sex. *Bing*, 959 F.3d at 618. For these reasons, Boudreaux fails to state a claim of sex-based discrimination under Title VII.

2. Boudreaux fails to state a Title VII retaliation claim (Count III)

Title VII prohibits employers from "discriminat[ing] against any of [their] employees . . . because [the employees] ha[ve] opposed any practice made an unlawful employment practice by [Title VII], or because [the employees] ha[ve] . . . participated in any manner in an investigation" under Title VII. 42 U.S.C. § 2000e–3(a). "Making use of informal grievance procedures and speaking up against an employer's discriminatory activity are examples of 'opposition.'" *Jones v. HCA*, 16 F. Supp. 3d 622, 634 (E.D. Va. 2014) (citing *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998)).

To state a claim for retaliation under Title VII, a plaintiff must allege "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Barnhill v. Bondi*, 138 F.4th 123, 132 (4th Cir. 2025) (cleaned up). To allege a causal link, a plaintiff must allege facts showing "the desire to retaliate was the but-for cause of the challenged employment action." *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 900 (4th Cir. 2017). Plaintiff may allege a causal link by alleging temporal proximity, or "the existence of other facts that alone, or in addition to temporal proximity,

suggests that the adverse employment action occurred because of the protected activity." *Johnson v. United Parcel Serv., Inc.*, 839 F. App'x 781, 784 (4th Cir. 2021).

Boudreaux only vaguely alleges "Defendant" (that is, BAH the corporate entity) retaliated against her.[8] (Am. Compl. ¶ 49.) She "does not actually articulate who was the 'decisionmaker' responsible for [the adverse actions] and does not allege that the responsible individual even knew of" her allegedly protected activity. *Jones*, 16 F. Supp. 3d at 635. This is insufficient to establish a causal link between her protected activity and any alleged adverse action.[9] *Cuffee v. Tidewater Cmty. Coll.*, 409 F. Supp. 2d 709, 721 (E.D. Va. 2006) (noting "[t]he most fundamental requirement for showing a causal link between the protected activity and the adverse employment action" in a retaliation claim is a decision-maker's knowledge of protected activity); *cf. Peters v. Mundelein Consol. High Sch. Dist. No. 120*, No. 21 C 0336, 2022 WL 393572, at *5 (N.D. Ill. Feb. 9, 2022) ("Without identifying at least one individual who imposed the adverse acts with a retaliatory motive, Plaintiff cannot [] state a claim for retaliation.").

Because Boudreaux has failed to allege any causal link between her protected activity and any adverse action, the court will dismiss Count III.

---

[8] In her Title VII retaliation claim, Boudreaux alleges the following adverse actions occurred because of her protected activity: that BAH 1) "constructively discharged" her and 2) "allowed Mr. Graham to cut her job hours [and] subject her to undue scrutiny." (Am. Compl. ¶ 49.) Because, as described above, Boudreaux has not alleged constructive discharge, the relevant adverse action for purposes of her Title VII retaliation claim is the latter allegation.

[9] While Boudreaux alleges that she reported Graham's behavior to BAH's human resources department, (Am. Compl. ¶ 48), the Fourth Circuit's Title VII retaliation "analysis has centered on what the relevant *decisionmaker* knew at the time of the adverse employment action, not on any knowledge other employees may have had that could be imputed to the employer." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 124 (4th Cir. 2021) (emphasis added); *see also Jennings v. Frostburg State Univ.*, 679 F. Supp. 3d 240, 281 (D. Md. 2023) (citing *Roberts*, 998 F.3d at 125) (noting that for purposes of establishing a retaliation claim, "constructive knowledge is not sufficient" and "actual knowledge is required").

3. <u>Boudreaux fails to state a retaliation claim under the Virginia Human Rights Act (Count IV).</u>

Boudreaux's VHRA retaliation claim proceeds along similar lines to her Title VII and ADA retaliation claims. In it, Boudreaux challenges retaliation she allegedly experienced after reporting Graham's allegedly discriminatory behavior and after seeking disability accommodations.

The parties contest several points regarding Boudreaux's VHRA claim. Most importantly, the parties contest whether VHRA claims must be administratively exhausted before litigation proceeds. (Pl.'s Resp. at 9–10; Def.'s Reply at 5–6.) While no state appellate authority exists on this question, a Virginia circuit court decision recently ruled that VHRA claims—unlike Title VII and ADA claims—need not be administratively exhausted. *Moore v. Copper River Shared Servs., LLC*, 2024 WL 5454690, at *4 (Va. Cir. Ct. Jan 30, 2024) (holding that the VHRA "envisions an optional avenue of relief that an aggrieved person can pursue but does not require a person to do so prior to bringing a private cause of action.").

The court need not reach this issue. Even assuming that none of Boudreaux's allegations are time-barred for purposes of her VHRA claim, she fails to state a claim for reasons already discussed. Again, Boudreaux only states that BAH, as a general corporate entity, retaliated against her. (Am. Compl. ¶ 55.) She has not identified any specific decision-maker who (1) performed the alleged adverse actions or (2) knew of her allegedly protected activities. Thus, Boudreaux has failed to allege a causal link—much less but-for causation—between her activities and BAH's alleged adverse actions. *Moore*, 2024 WL 5454690, at *4; *see also id.* at *1 (noting that the defendant's CEO knew of plaintiff's protected activity shortly before plaintiff was fired).

Moreover, Boudreaux's request for disability accommodations occurred five to six months prior to the alleged adverse actions.  (Am. Compl. ¶¶ 19, 28–29.)  This is insufficient, without more, to show a causal link between the two.  *See Pascual v. Lowe's Home Centers, Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006) (holding that a three-to-four month lapse between alleged protected activities and an adverse action was too great to create an inference of retaliation).

For these reasons, the court will dismiss Count IV.

### IV.    Conclusion

For the foregoing reasons, the court will grant BAH's motion to dismiss Boudreaux's amended complaint.  All counts will be dismissed without prejudice.  The court will grant Boudreaux leave to file an amended complaint within fourteen (14) days of the court's order. Time-barred allegations may not be included in the amended complaint.

An appropriate Order will issue.

**ENTERED** this 20thday of March, 2026.

_____
HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE