CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
September 24, 2026
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| Stephanie Boudreaux, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:25-cv-00051 |
| | ) | |
| Booz Allen Hamilton, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This matter is before the court on Defendant Booz Allen Hamilton's motion to dismiss Plaintiff Stephanie Boudreaux's second amended complaint. (Dkt. 34.) For the following reasons, the court will grant in part and deny in part the motion.

## I. Background

The court assumes familiarity with the facts of the case as alleged in Boudreaux's first amended complaint, which are discussed in detail in the court's previous memorandum opinion. (*See* Mem. Op. at 1–4 (Dkt. 29).) In resolving Booz Allen Hamilton's ("BAH") motion to dismiss, the court will focus on the new facts alleged in the second amended complaint ("SAC") and will discuss these specific facts in its analysis below.

In her first amended complaint, Boudreaux brought several claims against BAH arising from Boudreaux's work on BAH's Defense Intelligence Agency Technical Collection Targeting Support ("TCTS") contract. (*See* Mem. Op. at 1–4.) Boudreaux alleged gender discrimination under Title VII (Count I), retaliation under the Americans with Disabilities Act

("ADA") (Count II), Title VII retaliation (Count III), and retaliation under the Virginia Human Rights Act ("VHRA") (Count IV). (First Am. Compl. ¶¶ 34–56 (Dkt. 14).)

On March 20, 2026, the court granted BAH's motion to dismiss the first amended complaint. (Dkt. 30.) The court found that various allegations in Boudreaux's first amended complaint were time-barred, and that Boudreaux failed to state a claim on all counts under the remaining allegations. (Mem. Op. at 7–19.) On Count I, the court found that Boudreaux failed to allege that BAH cut her work hours because of her sex. (*Id.* at 12–16.) The court dismissed Count II after finding that the allegations supporting the claim were time-barred. (*Id.* at 8.) On Counts III and IV, the court found that Boudreaux failed to allege any decisionmaker responsible for any alleged adverse action or who knew about her alleged protected activity. (*Id.* at 16–19.)

On April 3, 2026, Boudreaux filed a second amended complaint. (Dkt. 32.) Boudreaux's SAC drops her ADA retaliation claim and re-alleges her Title VII discrimination claim, Title VII retaliation claim, and VHRA claims. (*See generally id.*)

## II. Standard of Review

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). They do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016)). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is

plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In reviewing a motion to dismiss for failure to state a claim, "a court must consider the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Bing*, 959 F.3d at 616.

## III. Analysis

BAH contends that Boudreaux's SAC fails to state a claim for each count. The court addresses each in turn.

### A. Title VII Discrimination (Count I)

To state a claim for sex discrimination under Title VII, Boudreaux "must allege sufficient facts to make it plausible that (1) she suffered an adverse employment action, and (2) the action was because of her sex." *Franovich v. Hanson*, 687 F. Supp. 3d 670, 683 (D. Md. 2023) (citing *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 584–85 (4th Cir. 2015)). "To allege that an employer acted because of [sex], there must be some connective thread between the alleged mistreatment and the protected status." *Kennedy v. NYX Ent., Inc.*, No. 8:25-cv-02035, 2025 WL 3017226, at *4 (D. Md. Oct. 28, 2025) (cleaned up). "An adverse employment action is a discriminatory act which adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." *James v. Booz–Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (cleaned up). "The presence of an adverse employment action is 'an absolute precondition' to an employment discrimination suit." *Franovich*, 687 F. Supp. 3d at 683 (quoting *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985)).

1. Boudreaux's alleged constructive discharge and BAH's failure to reassign her do not constitute adverse actions.

As in her first amended complaint, Boudreaux's SAC alleges that BAH committed adverse actions when it "constructively discharged her" and "kept her on Mr. Graham's team." (SAC ¶ 39.) The court again finds that these alleged acts are not "adverse actions" for several reasons. First, Boudreaux's briefing does not respond at all to BAH's argument that her alleged work conditions were not objectively intolerable and thus did not amount to constructive discharge. "Failure to respond to conspicuous, nonfrivolous arguments in an opponent's brief constitutes a waiver of the corresponding claims." *See, e.g.*, *Evans v. City of Lynchburg*, 766 F. Supp. 3d 614, 618 (W.D. Va. 2025). Moreover, just as the court found in its previous memorandum opinion, the court again finds that the "difficult or unpleasant working conditions" alleged in the SAC would not "compel a reasonable person to resign." *Williams v. Giant Food Inc.*, 370 F.3d 423, 434 (4th Cir. 2004); (Mem. Op. at 13–14.)

Boudreaux's second alleged adverse action—that BAH kept her on Graham's team rather than reassigning her because of her sex—again falls short. The court previously explained that BAH's refusal to reassign Boudreaux does not constitute an adverse action. (Mem. Op. at 14 ("Courts have repeatedly held that 'denial of a request to transfer to a new supervisor is not an adverse action.'" (citing *Stewart v. Ross*, Nos. 1:18-cv-01369, 1:16-cv-00213, 2020 WL 1907471, at *16 (E.D. Va. Apr. 17, 2020), *aff'd*, 833 F. App'x 995 (4th Cir. 2021))).) Boudreaux's SAC and briefing offer no reason why the court should change this determination.

2. Boudreaux has adequately alleged that BAH cutting her hours constituted an adverse action.

Boudreaux alleges one remaining adverse action: that BAH and Jeff Graham, her program manager, cut her work hours on the TCTS contract. (SAC ¶¶ 6, 16–21.) Defendant argues that this did not constitute an adverse action, as it did not affect any term or condition of Boudreaux's employment. (Def.'s Br. at 16–17 (Dkt. 35).)

The court finds that Boudreaux has adequately alleged an adverse employment action. "[A] plaintiff alleging Title VII discrimination need not show that harm incurred from [an adverse action] was 'significant.'" *Herkert v. Bisignano*, 151 F.4th 157, 164 (4th Cir. 2025). Instead, it is enough that the plaintiff has suffered "some disadvantageous change in an employment term or condition." *Muldrow v. City of St. Louis*, 601 U.S. 346, 354 (2024) (cleaned up). Boudreaux alleges that her hours were cut more than those of any of her team members, "negatively impacting her income, and bonus and promotion potential." (SAC ¶ 28.) As Defendant notes, Boudreaux could have been more factually specific on this point. (Def.'s Br. at 14 n.9.) But at the pleading stage, this suffices as an allegation of "some disadvantageous change in an employment term or condition." *Muldrow*, 601 U.S. at 354.

3. Boudreaux fails to allege that she faced discrimination because of her sex.

However, Boudreaux's discrimination claim still fails. In the SAC, Boudreaux again fails to allege that her hours were cut "because of" her sex. The only method by which Boudreaux alleges sex-based discrimination is via similarly situated comparators.[1] Specifically,

[1] Boudreaux concedes that she cannot allege any statements that are directly "indicative of discriminatory animus." *Olarewaju v. Allied Universal*, No. DKC 21-3250, 2022 WL 3027991, at *4 (D. Md. Aug. 1, 2022); (*see* Pl.'s Resp. at 8–9 (Dkt. 38 ("While the Second Amended Complaint does not contain any direct statements from Mr. Graham that demonstrate gender-based discriminatory animus, it is replete with circumstantial evidence[:]" Graham's alleged favorable treatment towards Boudreaux's male co-workers).)

Boudreaux alleges that three male employees—Chris Puccio, Joel Tower, and Benjamin Benitez—had their hours cut less than Boudreaux or other women on the team. (SAC ¶ 20.) Boudreaux also alleges that "out of four (4) female BAH employees on the TCTS contract, none of them were scheduled to have hours in April of 2023," and "[o]nly male employees were scheduled to have TCTS contract hours in April." (*Id.* ¶ 21.)

A plaintiff is "not required as a matter of law to point to a similarly situated comparator to succeed on a discrimination claim." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010), *cert. denied*, 562 U.S. 1219 (2011). But a plaintiff who relies on comparators to plead a discrimination claim "must identify the proposed comparator and 'establish a plausible basis for believing [the plaintiff and proposed comparator were] actually similarly situated.'" *Asi v. Info. Mgmt. Grp., Inc.*, No. GLR-18-3161, 2019 WL 4392537, at *6 (D. Md. Sept. 13, 2019) (quoting *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 191 (4th Cir. 2010)); *cf. Ruttenberg v. Jones*, 283 F. App'x 121, 131 (4th Cir. 2008) (affirming dismissal of equal protection claim that "fail[ed] to allege the existence of similarly situated individuals"). "While there is no 'bright-line' rule for what makes two comparators 'similar' for purposes of Title VII claims, courts consider 'whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision." *Johnson v. Balt. City*, 163 F.4th 808, 815 (4th Cir. 2026) (cleaned up) (examining whether a plaintiff sufficiently alleged a comparator at the motion to dismiss stage).

As she did in her first amended complaint, Boudreaux fails to allege that she and her proposed comparators were similarly situated. Boudreaux's SAC improves upon her first amended complaint by providing additional details about the proposed comparators, including their names and the fact they were "coworkers" who "[u]pon information and belief . . . were all also supervised by Mr. Graham on the TCTS contract." (SAC ¶ 17.) Boudreaux also alleges that she worked on the contract for a longer period than these individuals. (*See id.* ¶ 23.) But Boudreaux does not allege that these individuals "held the same job description," "were subject to the same standards," or "had comparable experience, education, and other qualifications." *Johnson*, 163 F.4th at 815. Nor does Boudreaux provide any information about differences between the "four (4) female BAH employees on the TCTS contract" whose April hours were eliminated and the "male employees [that] were scheduled to have TCTS contract hours in April." (SAC ¶ 21.) Without any additional information, Boudreaux has not alleged "sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that . . . would allow . . . an inference of discrimination." *Johnson*, 163 F.4th at 815 (cleaned up).

Just as the court found in its previous memorandum opinion, (Mem. Op. at 15–16), Boudreaux fails to state a sex discrimination claim under Title VII. Because Boudreaux's sole allegation raising an inference of discrimination falls short, the court would have to "speculate" to "fill in the gaps" as to whether BAH's action occurred because of Boudreaux's sex. *Bing*, 959 F.3d at 618.

**B. Title VII Retaliation (Count II)**

Title VII prohibits employers from "discriminat[ing] against any of [their] employees . . . because [the employees] ha[ve] opposed any practice made an unlawful employment practice by [Title VII], or because [the employees] ha[ve] . . . participated in any manner in an investigation" under Title VII. 42 U.S.C. § 2000e–3(a). "Making use of informal grievance procedures and speaking up against an employer's discriminatory activity are examples of 'opposition.'" *Jones v. HCA*, 16 F. Supp. 3d 622, 634 (E.D. Va. 2014) (citing *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998)). To establish a prima facie case of retaliation, a plaintiff must show: "(1) engagement in a protected activity; (2) [an] adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman*, 626 F.3d at 190.

"Importantly, however, a Title VII retaliation claim may survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) even if the complaint does not allege facts sufficient to establish the *McDonnell Douglas* framework's prima facie case." *Barbour v. Garland*, 105 F.4th 579, 590 (4th Cir. 2024). "At bottom, in order to adequately plead a Title VII retaliation claim, the complaint must allege[] facts supporting a plausible inference that [the employer took an adverse employment action against the plaintiff] because of [the plaintiff's] protected activity." *Id.* (cleaned up) (alterations in original). "Temporal proximity between an employee's charge of discrimination and an adverse employment action can support an inference that the employer acted 'because' of that charge." *Holloway v. Maryland*, 32 F.4th 293, 300 (4th Cir. 2022). For establishing a *prima facie* case of retaliation at the summary judgment stage, courts have found that "[e]stablishing a 'causal relationship' . . . is not an onerous

burden." *Smith v. CSRA*, 12 F.4th 396, 417 (4th Cir. 2021). Unlike in the Title VII discrimination context, adverse actions for Title VII retaliation claims "[are] not tied to the terms and conditions of employment, and so may include a wider variety of conduct within its scope." *Herkert*, 151 F.4th at 165 (cleaned up). An adverse action in a retaliation claim need only be "serious enough to 'dissuade[] a reasonable worker from making or supporting a charge of discrimination.'" *Muldrow*, 601 U.S. at 357 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

At the pleading stage, Boudreaux's Title VII retaliation claim passes muster. First, BAH does not contest that Boudreaux engaged in protected activity when she reported Graham's alleged "retaliatory behavior and disparate treatment" to BAH. (SAC ¶ 15.) Second, Boudreaux has alleged she experienced an adverse employment action when her hours were cut on the TCTS contract. Because this cut allegedly "negatively impact[ed] her income, and bonus and promotion potential," (SAC ¶ 28), Boudreaux has alleged an action that might "dissuade a reasonable worker from protected activity." *Herkert*, 151 F.4th at 166 (cleaned up).

Third, Boudreaux has alleged a causal link between the adverse employment action and her protected activity. Here, in contrast with her first amended complaint, Boudreaux's SAC no longer solely consists of vague allegations that BAH—as a general corporate entity—retaliated against her. Boudreaux more directly alleges that Graham was the decisionmaker who cut her hours on the TCTS contract. (SAC ¶¶ 19, 45.) Next, Boudreaux alleges that Graham "was well aware that Plaintiff reported him to Defendant's human resources department on February 6, 2023, and that she had reported him . . . previously." (*Id.* ¶ 18.)

And finally, Boudreaux alleges that she experienced this adverse action (her hours on the TCTS contract being cut) three weeks after she engaged in protected activity, on February 27, 2023. (*Id.* ¶ 19.) This temporal proximity—combined with Graham's alleged knowledge of her protected activity—is sufficient to state a retaliation claim at this stage.[2] The Fourth Circuit has "made abundantly clear that temporal proximity suffices to show a causal relationship" at the stage of showing a *prima facie* case. *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 654 (4th Cir. 2021) (holding that the district "court erred by holding that temporal proximity alone cannot establish a causal relationship"). The same is true at the pleading stage. *Clem v. Maryland*, No. CV ADC-21-1633, 2021 WL 6126290, at *4 (D. Md. Dec. 28, 2021) ("[T]emporal proximity is sufficient to satisfy the causation prong at the pleading stage."). And three weeks qualifies as close temporal proximity. *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 579 (4th Cir. 2015) ("Jacobs was terminated just three weeks after requesting an accommodation from her supervisors. This close temporal proximity is sufficient to establish a disputed issue of fact as to the causation element of the prima facie case.").

For these reasons, the court finds that Boudreaux has sufficiently alleged a causal connection between her protected activity and the alleged adverse action. The court will deny BAH's motion to dismiss Count II.

[2] Defendant argues that Boudreaux did not plausibly allege that Graham knew of her protected activity, as "the SAC offers no factual allegations that plausibly show *how* or *why* Mr. Graham actually knew of Plaintiff's February 6, 2023 complaint (or any others)." (Def.'s Reply at 10 n.5 (Dkt. 39).) Boudreaux's SAC alleges with more than "mere speculation" that Graham was aware of her complaints. *Transamerica Premier Life Ins. Co. v. Selman & Co., LLC*, 401 F. Supp. 3d 576, 588 (D. Md. 2019). After all, the SAC alleges Graham was aware that Boudreaux had engaged in "protected activity" and "requested accommodations" in the past, (*see* SAC ¶ 10), and that Graham emailed her on February 6, 2023—the day she complained and a day on which Boudreaux was on leave—asking to know which hours she planned to work on the TCTS contract, (*id.* ¶¶ 15–16). But even if the court agreed that Boudreaux "failed to allege knowledge on the part of a decision maker," the Fourth Circuit has noted that plaintiffs are not "required to make this showing [of knowledge] at the pleading stage." *Miller v. Md. Dep't of Nat. Res.*, 813 F. App'x 869, 878 (4th Cir. 2020). Title VII "does not require proof of [knowledge] at the pleading stage; it only requires some facts supporting a 'reasonable inference' of causation." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

### C. VHRA Discrimination and Retaliation (Count III)

Boudreaux brings several claims under the VHRA in Count III: a sex discrimination claim, a disability discrimination claim, and a claim for retaliation when BAH cut her hours on the TCTS contract. (SAC ¶¶ 48–52.)

1. For the reasons outlined in Sections III.A and III.B, Boudreaux fails to state a VHRA gender discrimination claim but plausibly states a VHRA retaliation claim.

To start, the parties contest whether federal Title VII standards apply to Boudreaux's VHRA claims. Plaintiff asserts that the court should interpret the VHRA pursuant to a Virginia state circuit court opinion, in the absence of relevant Virginia appellate precedent on the statute. (Pl.'s Resp. at 12–14 (discussing *Moore v. Copper River Shared Servs., LLC*, 113 Va. Cir. 47, 2024 WL 5454690 (2024).) BAH argues that given the nearly identical language of the VHRA and Title VII, the court should analyze Boudreaux's VHRA and Title VII claims together. (Def.'s Br. at 20.)

This court will analyze Boudreaux's VHRA claims under federal Title VII standards, in line with this court's practice. *Hairston v. Nilit Am., Inc.*, No. 4:23-CV-00011, 2024 WL 5190039, at *12 (W.D. Va. Dec. 20, 2024) (citing *Washington v. Offender Aid & Restoration of Charlottesville-Albemarle, Inc.*, 677 F. Supp. 3d 383, 394 n.4, 396 (W.D. Va. 2023)). This approach is also in keeping with Virginia state law. "When the General Assembly adopts language substantially similar to that of another jurisdiction's regulation, a presumption arises that the legislature also intended to adopt the prior interpretation placed upon the language by the promulgating authority." *Va. Dep't of Lab. & Indus. v. Westmoreland Coal Co.*, 353 S.E.2d 758, 763 (Va. 1987). Indeed, another Virginia circuit court held that "[s]ince [Title VII] and [the VHRA] are so similar," the court would "apply the presumption that the General Assembly

adopted the federal interpretation of the Virginia statute when it expanded" the VHRA in 2020. *Rodriguez v. Sci. Applications Int'l Corp.*, 116 Va. Cir. 109, 2025 WL 4733009, at *2 (2025); *see also id.* ("The General Assembly expanded the application of the VHRA only recently. As a result, Virginia cases interpreting the VHRA are scarce. By comparison, there is a robust body of federal law interpreting the *nearly identical* federal analogue of the VHRA, Title VII of the Civil Rights Act of 1964." (emphasis added).)

In any event, the court does not discern relevant differences between *Moore* and federal Title VII standards regarding Boudreaux's VHRA claims. Plaintiff points out that *Moore* applied a "but-for" causation standard for VHRA retaliation claims under § 2.2-3905(B)(7). (Pl.'s Resp. at 13.) But federal courts do the same in Title VII retaliation cases. *Compare Moore*, 2024 WL 5454690, at *4, *with Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016) (noting that "Title VII retaliation claims must be proved according to traditional principles of but-for causation"). Likewise, both Title VII and *Moore* prohibit an employer from using a protected trait as a "motivating factor" in an adverse employment decision. *Compare Moore*, 2024 WL 5454690, at *4, *with Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174 (2009) ("Congress has since amended Title VII by explicitly authorizing discrimination claims in which an improper consideration was 'a motivating factor' for an adverse employment decision.").

Accordingly, the court will dismiss Boudreaux's VHRA discrimination claim for the reasons it will dismiss her Title VII discrimination claims. (*See supra* Section III.A.) Likewise, the court declines to dismiss Boudreaux's VHRA retaliation claim for the reasons discussed regarding her Title VII retaliation claim. (*See supra* Section III.B.)

2. Boudreaux fails to state a claim for disability discrimination under the VHRA.

Next, Count III alleges disability discrimination under the VHRA. (SAC ¶ 51 ("Defendant, through Mr. Graham and Mr. Wright, discriminated and retaliated against Plaintiff when it allowed Mr. Graham to cut Plaintiff's hours based on her gender and disability status.").) But Boudreaux fails to allege that she was discriminated against "because of" her disability for several reasons.

Boudreaux makes only one allegation of arguable direct discriminatory animus.[3] She alleges that "[o]n February 6, 2023," she "took time off work to address her health concerns related to her disabilities." (SAC ¶ 16.) Boudreaux alleges that she asked F. Marshall Wright, a subordinate to Graham, why her hours had been cut more than anyone else's. (SAC ¶ 22.) Wright responded, "I don't know. You will have to talk to [Mr. Graham] . . . maybe it's because you've missed so many hours before." (SAC ¶ 24.) "When Plaintiff reminded Mr. Wright that she missed time because of her disability related illness, that she had done so using leave without pay so that she would not have to use her PTO, and that it was not right for Mr. Graham and Defendant to use her disability to preemptively cut her contract hours, Mr. Wright just told her to speak with Mr. Graham." (*Id.* ¶ 25.)

Even assuming this allegation showed animus on the part of Wright, this comment from Graham's subordinate is not sufficient to allege discriminatory animus on the part of the relevant decisionmaker, Graham. Nor has Boudreaux made any allegation that the so-called

[3] Boudreaux's SAC makes a passing reference to the fact that Graham "interfer[ed] with [her] requested accommodations based on her disabilities." (SAC ¶ 6.) This appears to be a reference to allegations from Boudreaux's first amended complaint that the court held to be time-barred. (Mem. Op. at 7–9.) The court will not consider this reference to apparently time-barred allegations. (*Id.* at 19 ("Time-barred allegations may not be included in the [second] amended complaint.").)

"cat's paw" theory of liability applies here, *see Staub v. Proctor Hosp.*, 562 U.S. 411, 415 (2011), such that Wright's discriminatory animus influenced the ultimate decisionmaker, Graham, to take the challenged adverse employment action. *See Lim v. Azar*, 310 F. Supp. 3d 588, 602 (D. Md. 2018) (noting that "a supervisor's discriminatory animus may support liability only if the supervisor was, in effect, principally responsible for, or the actual decisionmaker behind, the action, such as when the formal decisionmaker simply rubberstamped the supervisor's recommendation." (cleaned up)).

Boudreaux offers one more allegation to show disability-based animus: comparator evidence. Boudreaux alleges, "[u]pon information and belief," that Graham "did not cut any other employee on Plaintiff's team's hours more than Plaintiff's, a disabled woman who engaged in protected activity." (SAC ¶ 20.) But this sparse allegation offers no information detailing how Boudreaux and these comparators were similarly situated. Without more, this allegation is insufficient to raise a plausible inference of disability discrimination. *Cf. Rodriguez*, 2025 WL 4733009, at *3 n.7.

For these reasons, the court will dismiss Count III to the extent it alleges sex or disability discrimination. The retaliation claims within Count III survive.

## IV. Conclusion

For these reasons, the court will grant in part and deny in part BAH's motion to dismiss Boudreaux's second amended complaint. The court will deny BAH's motion as to Count II and the portions of Count III alleging retaliation under the VHRA. The court will grant BAH's motion to dismiss Count I and the portions of Count III alleging disability or gender discrimination under the VHRA. These claims will be dismissed without prejudice.

An appropriate Order will issue.

**ENTERED** this 24th day of September, 2026.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE